FILED
2015 Jan-05  PM 12:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | | |
|---|---|---|
| **JANET EMBERG,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 6:14-cv-0313-CLS** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER

Claimant, Janet Emberg, commenced this action on February 20, 2014, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards.  Specifically, claimant asserts that the ALJ improperly considered the opinions of her treating physicians.  Upon review of the record, the court concludes that those contentions lack merit, and that the Commissioner's ruling is due to be affirmed.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted).  Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*.  Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner."  20 C.F.R. § 416.927(e).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate:  the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can

be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(d). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

## A.    Dr. Raquib

Dr. Farouk Raquib, the treating physician for claimant's physical problems, completed a "Functional Assessment (Physical)" form on January 5, 2012.  He indicated that claimant would need to alternate between sitting, standing, and walking every twenty minutes, and that she would need to rest for ten minutes between each activity.  She could never lift or carry any amount of weight.  She could never climb, stoop, crouch, or crawl, but she could occasionally push and pull with both arms and legs, balance, kneel, reach, handle, feel, talk, and hear.  She could never be exposed to extreme cold, vibration, moving mechanical parts, high places, or environmental irritants like fumes, noxious odors, dust, mists, gases, and poor ventilation.  She could occasionally be exposed to extreme heat, wetness, and humidity.  She should only be exposed to very quiet noise levels.[1]

Dr. Raquib also completed a "Clinical Assessment of Pain" form the same day.

---

[1] Tr. 401-02.

He indicated that pain would be present to such an extent as to negatively affect adequate performance of daily activities or work, and that physical activity would greatly increase claimant's pain to such a degree as to cause distraction from or total abandonment of tasks.  He opined that claimant's medical condition and resulting pain would cause more than four absences from work each month, and that the side effects of claimant's medications could be expected to be severe and to limit her effectiveness due to distraction, inattention, and drowsiness.  Finally, Dr. Raquib indicated that claimant's objectively determined medical conditions could reasonably be expected to produce the pain of which she complained, and that claimant experienced pain at the level described as of January 4, 2011, her alleged onset date.[2]

The final form completed by Dr. Raquib on January 5, 2012 was a "Clinical Assessment of Fatigue/Weakness" form.   Dr. Raquib indicated that claimant experienced fatigue and/or weakness to such an extent as to negatively affect adequate performance of daily activities or work, and that physical activity would greatly increase claimant's fatigue and/or weakness to such a degree as to cause total abandonment of tasks.   Dr. Raquib opined that the side effects of claimant's prescribed medications could be expected to be severe and to limit her effectiveness due to distraction, inattention, and drowsiness.  Finally, Dr. Raquib indicated that claimant suffered an underlying medical condition that could reasonably be expected

---

[2] Tr. 398-99.

to produce the fatigue and/or weakness she experienced.[3]

The ALJ afforded only minimal weight to Dr. Raquib's opinions.[4]  He reasoned that the limitations imposed by Dr. Raquib were inconsistent with claimant's reported activities, including caring for her children, performing some household chores with rest, driving alone, shopping for groceries, and paying bills.[5]  He also reasoned that Dr. Raquib's assessments were inconsistent with his own treatment notes, which indicated that claimant experienced only moderate pain and was sometimes non-compliant with her treatment regimen.[6]

The record provides ample support for the ALJ's conclusion.  Indeed, Dr. Raquib's notes repeatedly state that claimant's urine drug screens were "inconsistent with our plan of care."[7]  Moreover, Dr. Raquib repeatedly noted that claimant's pain was under control, or at only a moderate level.[8]  On January 5, 2012, the same day Dr. Raquib assessed claimant with disabling pain, his treatment notes state that claimant experienced pain at only a level 6.  Claimant was "in no distress" and "in good

---

[3] Tr. 400.

[4] Tr. 29.

[5] Tr. 23-24, 27.

[6] Tr. 27-28.

[7] Tr. 296 (April 4, 2011), 300 (February 3, 2011), 393 (September 1, 2011), 396 (July 7, 2011), 397 (June 2, 2011), 415 (May 31, 2012), 444 (September 25, 2012).

[8] Tr. 300 (February 3, 2011:  pain "under good control"), 296 (April 4, 2011: pain "stable" at a level 5), 397 (June 2, 2011: claimant "alert" and "cheerful" despite reporting level 8 pain), 394 (August 3, 2011: despite reporting pain at level 9, claimant "always stays busy" with her children), 393 (September 1, 2011: claimant "functioning well" with "no physical . . . impairment" and only level 5 pain).

5

spirits."  Dr. Raquib also stated that claimant's pain was "well controlled" on medication, which had "been effective in decreasing pain and increasing level of functioning and improved quality of life."[9]  Only a month later, on February 6, 2012, claimant's pain level had decreased to a 3.[10]  Even when the pain level increased again to a 6 in March, and an 8 in April and May, Dr. Raquib still stated that the pain was "well controlled" with her medications.[11]  On June 28, 2012, the pain level was back down to a 4, and Dr. Raquib stated that claimant could travel for up to two hours without stopping, even though he inconsistently indicated that claimant could only sit, stand, and walk for thirty minutes at a time.[12]  Taken as a whole, Dr. Raquib's records simply do not indicate the presence of disabling pain on a sustained basis that would prevent all work activity.

Additionally, the ALJ's decision to reject Dr. Raquib's assessments was supported by the reports of Dr. Samia Moizuddin, the consultative physical examiner, and Dr. Robert Heilpern, the state agency physician.  Even though Dr. Moizuddin indicated that claimant could only sit, stand, and walk for a total of six hours during an eight-hour day, the ALJ concluded that assessment was based primarily upon claimant's subjective complaints, as the remainder of Dr. Moizuddin's assessments

---

[9] Tr. 434-37.

[10] Tr. 429.

[11] Tr. 412, 415, 416, 419, 421, 423, 425, 427.

[12] Tr. 407.

were not nearly so limiting.  Moreover, most of Dr. Moizuddin's clinical findings —
including range of motion, dexterity, grip strength, muscle strength, muscle tone,
squatting, and heel-toe walk — were normal.[13]  Dr. Heilpern also assessed functional
limitations that were far less severe than those assessed by Dr. Raquib.[14]

## B.    Dr. Scott

Warren Scott, claimant's treating psychiatrist, completed a "Medical
Assessment Form (Mental)" on June 29, 2011.  He indicated that claimant had severe
limitations in her ability to follow work rules, relate to co-workers, deal with the
public, use judgment, interact with supervisors, deal with work stresses, function
independently, and maintain attention and concentration.  She had moderate
limitations in her ability to understand, remember, and carry out even simple
instructions.  She also had moderate impairment of her ability to maintain personal
appearance, behave in an emotionally stable manner, relate predictably in social
situations, and demonstrate reliability.   Dr. Scott also stated that claimant's
concentration level was poor.[15]

The ALJ afforded only minimal weight to Dr. Scott's assessment because it
was inconsistent with Dr. Scott's own records and the other record evidence

---

[13] Tr. 337-42.

[14] *See* Tr. 316-22.

[15] Tr. 391-92.

regarding claimant's psychiatric condition.[16]  That conclusion was supported by substantial evidence.  Despite claimant's reports of sleep problems, crying episodes and irritability during an office visit on June 8, 2011, Dr. Scott assessed a GAF score of 55, indicating only moderate symptoms.  Dr. Scott's clinical findings also were normal, other than depressed mood and limited insight.  Claimant had adequate grooming, appropriate speech, appropriate affect, cooperative behavior, and logical thought.  Her judgment was fair, and her concentration was good.  She was oriented as to person, place, and thing, and she did not have any memory impairment.[17] Claimant reported improvement with her medications by June 28, 2011, one day before Dr. Scott completed the assessment form indicating severe limitations.  Her mood had improved to "euthymic," her insight had improved to "good," and she still received a GAF score of 55.[18]  Claimant did not return to Dr. Scott until January 16, 2012, by which time her GAF score had elevated to 60.  All of the clinical findings from that visit were normal, and Dr. Scott stated that claimant was "doing okay" as long as she was on her medications.[19]  On February 29, 2012, claimant was "doing well" because her medications were working.  All of the clinical findings were

---

[16] Tr. 29.

[17] Tr. 405.

[18] Tr. 404.

[19] Tr. 403.

normal, and her GAF score increased to 65, indicating only mild symptoms.[20]  These treatment records do not support Dr. Scott's assessment of disabling mental limitations.

The ALJ's decision to reject Dr. Scott's opinion also was supported by other medical evidence of claimant's mental condition.  Sylvia Colon, the consultative psychiatric examiner, indicated on July 14, 2012 that claimant experienced only slight to moderate impairments in her ability to understand, remember, and carry out instructions, and her ability to respond appropriately to supervision, co-workers, and work pressures in a work setting.[21]  She stated that claimant's prognosis for recovery was "fair" as long as she received appropriate treatment.  Claimant would not likely be able to return to her previous employment as an LPN, but if she "continues to be stable she may be able to work at a less demanding job."[22]

Finally, the ALJ's decision was supported by the findings of Melissa F. Jackson, Ph.D., the state agency psychological examiner.  Dr. Jackson noted that claimant suffered from bipolar disorder, generalized anxiety disorder, and polysubstance dependence in sustained remission.[23]  Claimant experienced moderate restriction of her activities of daily living; moderate difficulty in maintaining social

---

[20] Tr. 439.

[21] Tr. 329-30.

[22] Tr. 335.

[23] Tr. 304, 306, 309.

functioning; and moderate difficulty in maintaining concentration, persistence, and pace. She had not experienced any extended episodes of decompensation.[24] Claimant had moderate limitation of her ability to understand, remember, and carry out detailed instructions; her ability to maintain attention and concentration for extended periods; her ability to interact appropriately with the general public; her ability to accept instructions and respond appropriately to criticism from supervisors; and her ability to respond appropriately to changes in the work setting. She was not significantly limited in any other areas.[25]

## C.    Conclusion and Order

In summary, the ALJ adequately articulated his reasons for rejecting the assessment of disabling limitations by claimant's treating physicians. The ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 5th day of January, 2015.

_____
United States District Judge

---

[24] Tr. 311.

[25] Tr. 324-26.